GRACE ELIZABETH PENNINGTON,

> Plaintiff,

> Case No. 23-cv-1736-pp

v.

KOHL'S CORPORATION,

> Defendant.

**ORDER GRANTING IN PART DEFENDANT'S MOTION TO EXCLUDE EXPERT OPINIONS (DKT. NO. 46), GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 47) AND DISMISSING CASE**

On December 29, 2023, the plaintiff filed a complaint alleging that she was seriously injured by an Instant Pot ULTRA Pressure Cooker she had purchased from the defendant. Dkt. No. 1. On November 14, 2025, the defendant filed a motion to exclude the opinions of the plaintiff's expert, Dr. David Rondinone, dkt. no. 46, and a motion for summary judgment, dkt. no. 47. The plaintiff opposes both motions. Dkt. Nos. 50, 51.

The court will grant in part the defendant's motion to exclude Dr. Rondinone's opinions, grant the defendant's motion for summary judgment and dismiss the case with prejudice.

## I.   Background

The defendant filed a proposed statement of undisputed facts in support of its motion for summary judgment. Dkt. No. 48. The plaintiff filed a response to those facts and included a statement of additional material facts in dispute.

1

Dkt. No. 51-1. The defendant did not file a response to the plaintiff's statement of additional material facts. Under Civil Local Rule 56(b)(3)(B) (E.D. Wis.), the defendant was required to file "a reply to any additional facts submitted by the opposing party." Because the defendant did not do so, the court may deem the plaintiff's additional material facts as undisputed. Civil L.R. 56(b)(4) ("The Court will deem uncontroverted statements of material fact admitted solely for the purpose of deciding summary judgment."); Smith v. Lamz, 321 F.3d 680, 683 (7th Cir. 2003) (a district court may find that that a party's failure to respond to the opposing party's statement of facts "as mandated by the local rules results in an admission"). The following facts are undisputed (or deemed undisputed) unless otherwise noted.

A.      The Incident

On January 4, 2022, the plaintiff was using her Instant Pot to make apple cider. Dkt. No. 51-1 at 9, ¶11. The recipe called for one sliced, unpeeled orange, as well as two teaspoons of whole cloves. Id. at 9, ¶12. The Instant Pot appeared clean prior to making the apple cider. Id. at 10, ¶13. After cooking, the plaintiff saw that the float valve was up while the Instant Pot was emitting steam from the steam release valve. Dkt. No. 50-2 at 69:20–22. The plaintiff covered her hand with paper towels and manually released the pressure by pressing the quick release button. Id. at 70:14–17, 72:10–24. The plaintiff stated that she released the button "[w]hen the float valve dropped and—and steam stopped" emitting from the Instant Pot. Id. at 75:5–6. When the Instant Pot's float valve dropped and stopped emitting steam, the plaintiff attempted to

2

open the lid but was unable to do so. Dkt. No. 51-1 at 10, ¶14. After the lid would not open, the plaintiff stopped and again pressed the "quick release" button to release any residual pressure. Id. at 10, ¶15. The float valve remained down, and the plaintiff tried to turn the lid again because she believed it was supposed to be unlocked and safe to open in that position. Id. at 10, ¶15.

The plaintiff attempted to open the lid three to four times, and on the final attempt, the lid came off. Id. at 10–11, ¶16. The parties dispute the amount of force the plaintiff used when she tried to open the Instant Pot. Id. at 4–5, ¶¶12–13. The plaintiff testified that when she removed the lid, it came off "extremely easy." Dkt. No. 50-2 at 81:7–16. The defendant characterizes the plaintiff's actions as "forcibly rotat[ing] the lid." Dkt. No. 51-1 at 4–5, ¶¶12–13.

After the plaintiff opened the Instant Pot's lid, a "volcano of apple cider explode[ed] over the edges" and she suffered burns to her abdomen and hands. Dkt. No. 50-2 at 91:17–18, 100:7–14. Prior to this, the plaintiff had used the Instant Pot several times a week or several times a month without incident. Dkt. No. 51-1 at 6, ¶14.

### B.   The Instant Pot

The Instant Pot was tested under Underwriters Laboratory (UL) safety standards, specifically UL 1026. Dkt. No. 51-1 at 1, ¶1. UL 1026 (entitled "Household Electric Cooking and Food Serving Appliances") generally encapsulates the basic standards for all consumer-grade electric cooking appliances. Id. at 7, ¶1. UL 136 (entitled "Pressure Cookers") is the applicable

3

standard for pressure cooker lid safety. <u>Id.</u> at 7, ¶2. UL 1026 incorporates by reference the testing standard from UL 136, which evaluates the locking mechanism for pressure cooker lids. <u>Id.</u> at 1, ¶2; Dkt. No. 50-4 at 21:12–21.

The plaintiff retained Dr. David Rondinone, a mechanical engineer employed with Berkeley Engineering and Research, Inc. (BEAR), as an expert. Dkt. No. 50-3 at 5. Dr. Rondinone explained that the Instant Pot used a pressure-based locking system; without internal pressure, the Instant Pot's float valve rests in a down and open position which allows the lid to rotate freely for removal. Dkt. No. 50-3 at 6. As the pressure under the lid increases, the float valve is pushed upward to prevent the lid from being opened while the cooker is pressurized. <u>Id.</u>

Dr. Rondinone reported that the design risk assessment method typically used for consumer products such as the Instant Pot is termed Failure Modes and Effects Analysis (FMEA). Dkt. No. 51-5 at 7, ¶3. It is Dr. Rondinone's opinion that the defendant failed to perform "a proper risk assessment [FMEA] for the subject pressure cooker" and that the defendant "should have conducted an FMEA or other Risk Assessment to eliminate unnecessary risks." <u>Id.</u> at 8, ¶4 (quoting Dkt. No. 50-3 at 14–15). Dr. Rondinone reported that under a proper FMEA, the first and most desirable method for controlling the risk should be to design it out. <u>Id.</u> at 8, ¶5. It is Dr. Rondinone's opinion that "warnings should never be accepted as a substitute for proper guarding or elimination of a hazard" and that the "preferred method of hazard mitigation is through design." <u>Id.</u> at 8, ¶6 (quoting Dkt. No. 50-3 at 9, 14).

Dr. Rondinone testified that trying to force open the lid of the Instant Pot when the float valve was still up or the lid is difficult to lift is a foreseeable misuse of the product. Dkt. No. 51-1 at 4, ¶10. Dr. Rondinone reported that a clogged float valve is also a foreseeable occurrence that could impact the Instant Pot's functioning. Dkt. No. 50-3 at 9. He states in his report that "[t]he inclusion [of] warnings in the user manual indicates" that the manufacturer "anticipated" that food debris may clog the float valve and cause it to function improperly. Dkt. No. 51-1 at 9, ¶9 (quoting Dkt. No. 50-3 at 9). Dr. Rondinone testified that the apple cider and orange slices the plaintiff was cooking in the Instant Pot at the time of the incident could have clogged the float valve "[d]epending on the amount of sugar and the viscosity of the contents." Id. at 9, ¶10 (quoting Dkt. No. 50-4 at 31:19–24). It is Dr. Rondinone's opinion that the inclusion of a device called a baffle would "protect the valves from clogging" and that "[t]hese types of baffles have been frequently used in the [pressure cooker] industry." Id. at 8–9, ¶7 (quoting Dkt. No. 50-3 at 9–10).

Dr. Rondinone inspected the Instant Pot and found that the float valve and locking mechanism functioned properly. Dkt. No. 51-1 at 3, ¶7. Dr. Rondinone testified that he did not see sufficient debris in the float valve that would have prevented it from operating properly but could not say whether there was debris in the float valve at the time of the incident. Id. at 3–4, ¶¶8–9.

It is Dr. Rondinone's opinion that "the mostly likely scenario is a boil-over event" due to the "description of the event," "the location of the plaintiff's injuries," the plaintiff's "description of how she was injured" and the "viscosity"

of the recipe used at the time. Dkt. No. 51-1 at 11, ¶17 (quoting Dkt. No. 50-4 at 34:21–25; 35:25–37:8). According to Dr. Rondinone:

> So a boil-over event is one of two things. It's—generally it's an event where the viscosity of the contents of the food contents are such that vapor be trapped within the contents of the food. . . . [A]s long as those contents are viscous enough, then they can trap vapor within the contents of the food, and when the lid is removed, that vapor can escape upward and bring the contents of the food with it. That's one—that's the primary form of a boil-over event.
>
> Another contribution to a boil-over event is that if there's a small amount of pressure still present in the unit, but pressure is lower than the pressure necessary to hold up the float valve. . . . Then the opening of the lid can allow that pressure to escape which then allows the contents of the food to re-boil because the boiling temperature will be—temperature of the food will be higher than the temperature of boiling at atmospheric, and that can also done contribute to the boil-over event. So those are the two contributions.

Dkt. No. 51-1 at 11–12, ¶18 (quoting Dkt. No. 50-4 at 35:25–37:8). Because the possibility of a boil-over event cannot be designed out of the product, Dr. Rondinone provided multiple examples of warnings that help prevent one from occurring, including warnings used by other pressure cooker manufacturers. Id. at 12, ¶¶19–20.

C.     Warnings

The Instant Pot came with an owner's manual that contains various warnings. Dkt. No. 51-1 at 1–2, ¶3. The manual warns consumers to "[a]lways check the steam release valve, float valve and anti-block shield for clogging before use." Id. at 2, ¶4 (quoting Dkt. No. 50-6 at 7). The manual warns consumers not to "force lid open when the float valve is **UP**. Make sure the float valve is **DOWN** when you open the lid." Id. at 2, ¶5 (quoting Dkt. No. 50-6 at 7 (emphasis in original)). The manual warns consumers not to "open the lid until

6

the pressure inside the pot is completely released. As a safety feature, until the float valve drops down the lid is locked and cannot be opened. Do not force lid open." Id. at 2–3, ¶6 (quoting Dkt. No. 50-6 at 23).

## II.      Motion to Exclude (Dkt. No. 46)

The defendant has filed a motion to exclude the opinions of Dr. Rondinone. Dkt. No. 46. Dr. Rondinone presents five conclusions and opinions in his report:

> 1.      Careful and prudent manufacturers and distributors of consumer products like pressure cookers perform FMEAs or similar risk assessments to eliminate or reduce potential dangers associated with their products. It appears unlikely that Kohl's performed a proper risk assessment for the subject pressure cooker. If Kohl's had not performed an FMEA or similar risk assessment, the lack thereof contributed to the failure experienced in this matter.
>
> 2.      The float valve in the subject cooker is exposed to potential clogging from food despite the fact that design alternatives have been demonstrated which mitigate this hazard.
>
> 3.      Based upon the events described, this was most likely a low pressure event due to [the plaintiff] opening the lid at approximately the same time as when the float valve was down.
>
> 4.      It is possible that [the plaintiff] accidentally depressed the float valve with her towel-wrapped hand while depressing the pressure release switch. Doing so would unlock the lid and allow her to open it while pressurized.
>
> 5.      The event description is consistent with the contents being forcefully expelled out of the pressure cooker under pressure. The evidence in this case indicates that the lid did separate from the base of the pressure cooker while still under pressure.

Dkt. No. 46-2 at 15.

7

## A. Parties' Arguments

### 1. *Defendant's Brief (Dkt. No. 46)*

The defendant argues that the court should exclude Dr. Rondinone's opinions because he did not employ a reliable methodology to develop his design defect theory and his opinions are irrelevant to the facts of the case. Dkt. No. 46 at 2. The defendant asserts that Dr. Rondinone opined that the Instant Pot's float valve could have been clogged by food at the time of the incident, yet he conceded that he did not observe any clogging. Id. at 7. It argues that Dr. Rondinone did not conduct any testing or experiments on the Instant Pot and is merely speculating on the cause of the incident, which is not sufficiently reliable under Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993). Id.

The defendant asserts that the clogged float valve theory is unsupported by factual or scientific evidence. Id. at 8. It argues that there is no evidence that the float valve was clogged because the plaintiff testified that the float valve was freely functioning at the time of the incident and Dr. Rondinone observed no clogging during his inspection. Id. The defendant argues that the opinions about a clogged float valve should be excluded as irrelevant and unhelpful to the jury. Id. at 8–9.

The defendant next argues that Dr. Rondinone's opinions on "possible" causes of the incident should be excluded as speculative and unsupported by evidence. Id. at 9. Dr. Rondinone testified that it was "possible" that the plaintiff "accidentally depressed the float valve" while attempting to remove the

8

lid; the defendant argues that this is speculative because Dr. Rondinone conducted no tests to determine whether it was possible to accidentally depress the valve in such a way. Id. Further, the defendant argues that Dr. Rondinone did not connect this theory to any alleged defect in the product, making it irrelevant to the case. Id. at 9–10. The defendant similarly argues that Dr. Rondinone's opinion that the incident was a "low-pressure event" should be excluded because it is unrelated to any alleged product defect and Dr. Rondinone did not perform any testing to support the theory. Id. at 10.

The defendant argues that Dr. Rondinone's opinion that the defendant failed to perform proper risk analysis should be excluded as unhelpful to the jury. Id. The defendant argues it is a retailer, not a manufacturer, and had no hand in the design or manufacture of the Instant Pot. Id. The defendant argues that as a retailer, it had no opportunity or obligation to perform a risk analysis on the product. Id. at 10–11. The defendant argues that the Instant Pot was certified under UL 1026, which Dr. Rondinone stated was the applicable safety standard for pressure cookers. Id. at 11. According to the defendant, UL 1026 incorporates hazard analysis and other safety measures in its certification process, which are the kind of risk assessments Dr. Rondinone reported the defendant should have used. Id. The defendant further argues that Dr. Rondinone does not explain how the performance of an FMEA would have prevented the plaintiff's injury or removed any alleged product defect. Id.

Next, the defendant argues that the court should exclude Dr. Rondinone's opinion that the Instant Pot's lid separated from the base while

9

the contents were still under pressure because Dr. Rondinone does not tie this opinion to any alleged defect in the product. Id. at 12. The defendant emphasizes that the plaintiff admits that she attempted to open the lid while the float valve was in the "up" position, which means that the contents were still under pressure. Id. It argues that attempting to remove the lid under these circumstances is a misuse of the product, so any resulting injury was not due to a defect in the product. Id.

The defendant argues that Dr. Rondinone's discussion of warnings in his report is irrelevant because he offers no conclusion or opinion as to the sufficiency of the Instant Pot's warnings. Id. at 13. The defendant argues that Dr. Rondinone does not identify what warnings should have been included on the Instant Pot, how those warnings would have prevented the incident or how the Instant Pot's existing warnings were inadequate. Id.

The defendant argues that all of Dr. Rondinone's opinions should be excluded as unreliable because he did not consider whether the plaintiff's misuse caused the incident. Id. It argues that the plaintiff attempted to remove the Instant Pot's lid while the float valve was in the "up" position, which is a misuse of the product. Id. at 14. The defendant argues that Dr. Rondinone "acknowledges this fact in his Report yet never analyzes whether [the plaintiff's] conduct caused the incident." Id. It argues that the plaintiff had used the Instant Pot several times a week prior to the incident and that Dr. Rondinone provides no explanation as to why the Instant Pot would suddenly become defective after operating safely for some time. Id. The defendant argues that Dr.

10

Rondinone's failure to consider obvious alternative causes renders all his opinions unreliable. Id. at 15.

### 2. *Plaintiff's Response (Dkt. No. 52)*

The plaintiff responds that Dr. Rondinone is a highly qualified expert and that he used a reliable methodology to develop his opinions. Dkt. No. 52 at 10–11. She argues that Dr. Rondinone knew from prior experience and testing that float valves on pressure cookers like the Instant Pot are susceptible to clogging, and that clogging can enable a user to lift the cooker's lid while the contents are under pressure. Id. at 11. The plaintiff asserts that Dr. Rondinone was aware that other pressure cookers place a shield over the float valve to prevent clogging and thus opined that the Instant Pot in this case could have been made safer by using a similar shield. Id. at 11–12. The plaintiff argues that Dr. Rondinone also considered the possibility of a boil-over event and opined that this was the most likely cause of the incident based on the evidence. Id. at 12.

The plaintiff argues that Dr. Rondinone was not required to test the Instant Pot to develop a reliable opinion. Id. at 13. According to the plaintiff, it would be "impossible" to replicate the exact circumstances of the incident because even two individuals following the same apple cider recipe may vary in the amount and type of ingredients used. Id. The plaintiff contends that Dr. Rondinone would have needed to repeat the test "hundreds" of times to develop a statistically meaningful result, which would be time-consuming and prohibitively expensive. Id. The plaintiff further argues that physical testing is not specifically required to develop a reliable expert opinion. Id. at 14–15 (citing

11

Cummins v. Lyle Indus., 93 F.3d 362, 369 (7th Cir. 1996) and other cases). The plaintiff argues that other courts have rejected similar attempts to exclude Dr. Rondinone's opinions in product liability cases. Id. at 15.

The plaintiff says that Dr. Rondinone's opinions about the incident being a "low pressure" event or caused by the plaintiff's accidental depression of the float valve are not speculative. Id. at 16. She argues that Dr. Rondinone concluded that the most likely cause of the incident was a low-pressure boil-over event based on "all of the evidence available," not on speculation. Id. The plaintiff maintains that she reported in her deposition that she pressed the steam release button and attempted to open the Instant Pot multiple times before she was ultimately able to lift the lid. Id. She argues that this supports Dr. Rondinone's theory that the incident was a low-pressure event because each time the Instant Pot releases steam, the pressure decreases. Id. According to the plaintiff, Dr. Rondinone developed the "accidental depression" theory because the steam release button is located right next to the float valve, so the plaintiff easily could have pressed the float valve down when attempting to release steam. Id. She argues that these opinions are based on a reliable application of Dr. Rondinone's expertise to the case's facts. Id. at 17.

The plaintiff argues that Dr. Rondinone was not required to consider the plaintiff's alleged misuse of the Instant Pot because it does not fit the facts of the case. Id. According to the plaintiff, the defendant erroneously argues that the plaintiff "forcibly rotated the lid" while the contents were under pressure; the plaintiff contends that the facts show that the lid came off "extremely easy."

12

Id. She argues that Dr. Rondinone need not consider alternative explanations that are contrary to the evidence. Id.

The plaintiff argues that Dr. Rondinone's opinions will assist the jury to determine whether the Instant Pot was defectively designed. Id. She argues that while Dr. Rondinone believes that the boil-over event is the most likely cause of the incident, he also considered the possibility that the float valve was clogged. Id. at 18. The plaintiff argues that Dr. Rondinone need not testify that there was a single cause of the incident but may testify that multiple factors contributed to the injury. Id. (quoting Burton v. Am. Cyanamid, 362 F. Supp. 3d 588, 597–98 (E.D. Wis. 2019)). She contends that Dr. Rondinone will help the jury understand how a pressure cooker works and what may contribute to its malfunction, which will help the jury decide whether the Instant Pot was defective. Id. at 19.

The plaintiff argues that there is no other reason to exclude Dr. Rondinone's opinions. Id. The plaintiff asserts that Dr. Rondinone correctly determined the defendant did not perform an FMEA or other risk assessment before selling the product. Id. at 19–20. She maintains that this helps show that the defendant was negligent in the sale and distribution of the Instant Pot. Id. at 20–21. According to the plaintiff, Dr. Rondinone opined that the likely cause of the incident was a boil-over or a clogged float valve and that he provided recommendations on how those defects could have been mitigated by a different design or warnings. Id. at 21. The plaintiff argues that these

13

opinions are relevant to whether the defendant provided sufficient warnings on the product, an independent theory of liability from a design defect. Id.

> 3. *Defendant's Reply (Dkt. No. 52)*

The defendant replies that the plaintiff cannot argue that a clogged float valve was the cause of the incident when there is no evidence suggesting the float valve was clogged at the time. Dkt. No. 52 at 2. The defendant asserts that Dr. Rondinone did not observe any clogging in the float valve and could not say whether the valve was clogged prior to his inspection. Id. The defendant says that Dr. Rondinone's theory about a clogged float valve is irrelevant and should be excluded because it does not fit the facts of the case. Id. at 2–3.

The defendant argues that the plaintiff improperly characterizes Dr. Rondinone's "accidental depression" opinion as an independent design defect. Id. at 3. It asserts that Dr. Rondinone did not present the possibility of depressing the float valve manually as a design defect in his expert report, and that the plaintiff cannot raise a new expert opinion at this stage. Id. at 3–4. The defendant similarly argues that Dr. Rondinone did not conclude that the defendant's warnings about boil-over events were inadequate or would have prevented the injury in this case. Id. at 5–6. The defendant contends that Dr. Rondinone did not tie the defendant's alleged failure to perform an FMEA to the plaintiff's injury. Id. at 7. The defendant reiterates its arguments that Dr. Rondinone should have tested the Instant Pot to support his opinions and considered the possibility of the plaintiff's misuse of the product. Id. at 8–10.

14

B.    Legal Standard

Rule 702 of the Federal Rules of Evidence and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) govern the admissibility of expert testimony. Under Rule 702, a witness may be qualified as an expert by knowledge, skill, experience, training or education. Fed. R. Evid. 702. The party seeking to introduce the testimony must establish that it is more likely than not that the testimony (specifically, the proposed expert's knowledge) will assist the trier of fact to understand the evidence or to determine a fact at issue, that the testimony is based on sufficient facts or data, that the testimony is the product of reliable principles and methods and that the expert's opinion reflects a reliable application of the principles and methods to the facts of the case. Id. The court acts as a gatekeeper to ensure that the testimony rests on a reliable foundation and is relevant to the task at hand. Kirk v. Clark Equip. Co., 991 F.3d 865, 872 (7th Cir. 2021) (quoting Daubert, 509 U.S. at 589).

Under Rule 702 and Daubert, the court engages in a three-step inquiry before admitting testimony. Gopalratnam v. Hewlett-Packard Co., 877 F.3d 771, 779 (7th Cir. 2017)). The court considers (1) the proffered expert's qualifications; (2) the reliability of the expert's methodology; and (3) the relevance of the expert's testimony. Id.

The court first considers the expert's qualifications. An expert need not have particular academic credentials to be qualified; "anyone with relevant expertise enabling him to offer responsible opinion testimony helpful to judge or jury may qualify as an expert witness." Tuf Racing Prods., Inc. v. Am. Suzuki

15

Motor Corp., 223 F.3d 585, 591 (7th Cir. 2000). "The question [the court] must ask is not whether an expert witness is qualified in general, but whether his 'qualifications provide a foundation for [him] to answer a specific question.'" Gayton v. McCoy, 593 F.3d 610, 617 (7th Cir. 2010) (quoting Berry v. City of Detroit, 25 F.3d 1342, 1351 (6th Cir. 1994)).

"A court's determination that an expert possesses the requisite qualifications does not, without more, provide a sufficient basis for admissibility." Kirk, 991 F.3d at 873. The court also must find the opinion to be reliable and relevant. In assessing reliability, courts may consider the following non-exhaustive factors:

> (1) Whether the particular scientific theory can be (and has been) tested;
> (2) whether the theory has been subjected to peer review and publication;
> (3) the known or potential rate of error;
> (4) the existence and maintenance of standards controlling the technique's operation; and
> (5) whether the technique has achieved general acceptance in the relevant scientific or expert community.

Id. (quoting Deputy v. Lehman Bros., Inc., 345 F.3d 494, 505 (7th Cir. 2003)).

Finally, the court considers whether the proposed expert testimony will assist the trier of fact in determining a fact in issue or understanding the evidence. Chapman v. Maytag Corp., 297 F.3d 682, 687 (7th Cir. 2002).

C.     Analysis

The defendant has not challenged Dr. Rondinone's qualifications, so the court will move directly to the second and third steps of the Daubert inquiry.

16

The court will address the defendant's last argument first because it challenges all of Dr. Rondinone's opinions. The defendant seeks to exclude all of Dr. Rondinone's opinions as unreliable because the defendant asserts that he failed to consider whether the plaintiff's misuse caused the incident. According to the defendant, the plaintiff misused the Instant Pot because she "forcibly rotated the lid multiple times while the float valve remained in the up position, conceding that the cooker was still pressurized and locked." Dkt. No. 46 at 12 (citing Dkt. No. 46-4 at 76:5-18; 80:19-81:3). But that is not what the plaintiff testified. The plaintiff testified that she first saw that the float valve was up while the Instant Pot was emitting steam from the steam release valve. Dkt. No. 50-2 at 69:20–22. The plaintiff stated that she covered her hand with paper towels and manually released the pressure by pressing the quick release button. Id. at 70:14–17, 72:10–24. She testified that she released the button "[w]hen the float valve dropped and—and steam stopped" emitting from the Instant Pot. Id. at 75:5–6. The plaintiff stated that the float valve was *down* each time she attempted to open the Instant Pot:

> Q: After the float valve went down and the steam stopped, is that when you attempted to open the Instant Pot?
>
> A: That was the first attempt, yes.
>
> . . . .
>
> Q: So the first time you described how you pressed the steam— or the quick release button until the float valve went down and the steam stopped coming out of the steam release, correct?
>
> A: Yes.

17

Q:      And if I understood you properly, subsequent to that attempt, every time you pressed—or you were releasing steam the float valve was down the entire time; it never went back up?

A:      Yes.

Dkt. No. 50-2 at 75:23–76:1, 79:23–80:8.

The "incident summary" in Dr. Rondinone's expert report similarly states that the plaintiff first "noted that the floating lock pin was in the 'Up' position," so she manually released the pressure until "[t]he floating lock pin depressed into the 'Down' position" before attempting to open the lid. Dkt. No. 46-2 at 4. None of the evidence shows that the plaintiff attempted to remove the lid while the float valve was up. The defendant's theory that the plaintiff misused the Instant Pot by attempting to open it while the float valve was up is not supported by evidence. Dr. Rondinone is not required to consider an alternative cause of injury that is not supported by evidence. The court will not exclude Dr. Rondinone's opinions as unreliable for this reason.

The defendant next argues that Dr. Rondinone did not employ a reliable methodology to conclude the Instant Pot's float valve may have been clogged because he did not test the Instant Pot and did not observe clogging in the float valve. When assessing reliability, the focus "must be solely on principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 595; see also Smith v. Ford Motor Co., 215 F.3d 713, 718 (7th Cir. 2000) ("[W]e emphasize that the court's gatekeeping function focuses on an examination of the expert's methodology."). "The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that

18

analysis are factual matters to be determined by the trier of fact, or where appropriate, on summary judgment." <u>Ford Motor Co.</u>, 215 F.3d at 718; <u>see also</u> <u>Manpower, Inc. v. Ins. Co. of Pa.</u>, 732 F.3d 796, 806 (7th Cir. 2013) ("Reliability . . . is primarily a question of the validity of the methodology employed by an expert, not the quality of the data used in applying the methodology or the conclusions produced."). "The district court usurps the role of the jury, and therefore abuses its discretion, if it unduly scrutinizes the quality of the expert's data and conclusions rather than the reliability of the methodology the expert employed." <u>Manpower</u>, 732 F.3d at 806.

Dr. Rondinone states that when preparing his report, he reviewed "[s]ubject and exemplar pressure cookers," documents the plaintiff produced in discovery including "photos of injuries, medical documents, etc." and "[v]arious legal documents" such as the complaint and discovery responses. Dkt. No. 46-2 at 5. Dr. Rondinone states that "[t]he subject pressure cooker has not been tested, but the behavior described indicates that the lid released from the pressure cooker base while still under pressure." <u>Id.</u> at 8. Dr. Rondinone goes on to discuss that "[p]rior testing and experience" has shown that food can clog pressure cooker valves. <u>Id.</u> at 9. Based on this, Dr. Rondinone then concludes that "[t]he float valve in the subject cooker is exposed to potential clogging from food." <u>Id.</u> at 15.

The plaintiff argues that other courts have approved Dr. Rondinone's methodology and found his opinions admissible in similar cases, even without physical testing. One court found Dr. Rondinone's opinion that a pressure

19

cooker incident was "most likely caused by a clogged float valve" was sufficiently "supported by his expertise, prior testing of pressure cookers, examination of Instant Pots, and [the plaintiff's] description of the incident." Loftis v. Walmart, Inc., No. 23-CV-5228, 2025 WL 1561261, at *4 (W.D. Ark. June 2, 2025). Another court found that an expert could testify that a pressure cooker incident may have been caused by clogging "based on the experts' prior experience with pressure cookers and clogging events and the facts of this case, including but not limited to [the plaintiff's] deposition testimony and [the defendant's] statements and warnings." Smith v. Tabletops Unlimited Inc., Case No. 22-CV-00198, 2024 WL 1620788, at *3 (E.D. Ark. Apr. 15, 2024). But at least one court has reached the opposite conclusion. In Moore v. Nat'l Presto Indus., Inc., 603 F. Supp. 3d 676, 682 (W.D. Wis. 2022), the court excluded an expert's opinion because he "did not use reliable methods to analyze the design of the pressure cooker." The court noted that the expert did not examine the subject pressure cooker and only presented various hypotheses as to how the pressure cooker may have failed. Id. at 681–82.

None of these district court cases are binding on this court (though Moore is the most persuasive because it is a published decision from another court in this circuit). The Seventh Circuit has held that hands-on testing is not an "absolute prerequisite to the admission of expert testimony" and that experts may rely on "experimental, statistical, or other scientific data generated by others in the field." Cummins v. Lyle Indus., 93 F.3d 362, 369 (7th Cir. 1996). Dr. Rondinone is thus entitled to rely on prior testing and experience

with similar pressure cookers to determine that the pressure cooker in this case was susceptible to clogging due to its exposed float valve. The court cannot conclude that Dr. Rondinone's methodology is so fundamentally flawed that the court must exclude his opinion on a reliability basis.

But the defendant also argues that Dr. Rondinone's opinion that the float valve may have clogged is irrelevant because there is no evidence of clogging in this case. Relevant evidence is "that which has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" Daubert, 509 U.S. at 587 (quoting Fed. R. Evid. 401). Rule 702's "basic standard of relevance thus is a liberal one." Id. The Rule 702 requirement that the expert's evidence or testimony must "assist the trier of fact to understand the evidence or determine a fact in issue" "goes primarily to relevance." Id. at 591.

Dr. Rondinone's opinions must be relevant to the claims the plaintiff is bringing, namely her design defect claim. To prove a design defect claim under Wisconsin law, the plaintiff must establish, in relevant part, that the product is defective in design and that the defective condition was a cause of her injury. Wis. Stat. §895.047(1). Although Dr. Rondinone generally opines that float valve clogging can occur, he does not opine that *in this case* the float valve was clogged at the time of the incident or that clogging could have caused the incident. Instead, he states that a boil-over is "the most likely scenario," Dkt. No. 50-4 at 34:21–25. Based on Dr. Rondinone's description of a boil-over, it

21

has nothing to do with a clogged float valve. See Dkt. No. 46-2 at 10 ("Boil over events may occur when a pressure cooker has apparently been relieved of pressure yet there is entrapment of a volume of above-boiling temperature contents below the liquid surface."). If a clogged float valve did not cause the injury—and the evidence suggests the float valve was not clogged at all—then Dr. Rondinone's opinions about float valve clogging are not relevant and not admissible. See Owens v. Auxilium Pharms., Inc., 895 F.3d 971, 972–73 (7th Cir. 2018) (district court properly excluded expert who based his conclusions on facts contradicted by the evidence in the case). The court will exclude Dr. Rondinone's opinions about float valve clogging as irrelevant.

The defendant argues that Dr. Rondinone's opinion that the plaintiff may have accidentally depressed the float valve while releasing steam from the Instant Pot is speculative and unsupported. This opinion, however, is not purely hypothetical. The plaintiff testified that the float valve was up until she pressed the steam release button to depressurize the Instant Pot. Dr. Rondinone opined that the float valve is immediately adjacent to the steam release button, making it easy to accidentally press the float valve down. Further, the plaintiff's hand was wrapped in paper towels at the time, so she may not have realized she was pressing down the float valve. Stating that it is "possible" that the plaintiff depressed the float valve does not meet the standard of reliability required by Daubert. See Huss v. Sharkninja Operating LLC, No. 23-CV-01435-, 2025 WL 257226, at *8 (S.D. Ind. Jan. 21, 2025) (expert's opinion that a blender's blade assembly could untwist itself during

use was speculative and not reliable where there was no evidence that such untwisting occurred in the case). Nor does Dr. Rondinone tie this possibility to any defect in the pressure cooker's design. Dr. Rondinone does not opine that the placement of the float valve is a design defect or that it makes the pressure cooker unreasonably dangerous. This opinion is not reliable or relevant to the facts of the case and must be excluded.

For similar reasons, the court must exclude Dr. Rondinone's opinions about the defendant's failure to perform an FMEA because they are not tied to any defect in the pressure cooker's design. Although Dr. Rondinone opines that the defendant "should have conducted an FMEA or other Risk Assessment to eliminate unnecessary risks as part of their design process," dkt. no. 46-2 at 14, he does not opine on what "unnecessary risks" are present in the finished product. He makes a conclusory statement that the lack of an FMEA "contributed to the failure experienced in this matter," dkt. no. 46-2 at 15, but does not explain how the FMEA relates to any alleged design defect that caused the injury. Further, Dr. Rondinone conceded in his deposition that there is no evidence that the defendant, as the *distributor* of the pressure cooker rather than the manufacturer, was involved in the design of the Instant Pot or had any obligation to perform an FMEA on a product it distributes. Dkt. No. 46-3 at 56:4–17, 58:7–22. The defendant's failure to perform an FMEA is not relevant to analyzing whether there was a defect present in the pressure cooker.

The court last addresses Dr. Rondinone's opinion that the plaintiff's injuries were caused by a boil-over event. Unlike his excluded opinions, this

23

opinion is relevant to the plaintiff's claims. Dr. Rondinone opines that other manufacturers warn users of the risk of a boil-over event and how that risk may be mitigated. See Dkt. No. 46-2 at 10–11. The adequacy of the defendant's warnings is relevant to the plaintiff's warning defect claim. See Wis. Stat. §895.047(1)(a) (product may be defective because of inadequate instructions or warnings). Further, Dr. Rondinone directly ties the warning to his proposed cause of the plaintiff's injuries. The court will not exclude Dr. Rondinone's opinions about the boil-over event and the defendant's related warnings.

The court will grant in part the defendant's motion to exclude and exclude all of Dr. Rondinone's opinions, except his opinions related to boil-over events and warnings related to such events. With the defendant's Daubert challenge resolved, the court will turn to the defendant's motion for summary judgment.

### III. Motion for Summary Judgment (Dkt. No. 47)

The defendant has moved for summary judgment on all claims, arguing that the plaintiff has not established that the Instant Pot was defectively designed or provided inadequate warnings. Dkt. No. 47 at 1–2.

#### A. Parties' Arguments

##### 1. *Defendant's Brief (Dkt. No. 47)*

The defendant argues that the plaintiff's evidence does not show that the Instant Pot was defectively designed. Id. at 8–9. The defendant says that Dr. Rondinone's report identifies a single design defect by asserting that the Instant Pot's float valve was susceptible to clogging. Id. at 10–11. The

24

defendant asserts that there is no evidence that the float valve was clogged at the time of the incident, so the plaintiff cannot establish that the float valve's alleged design defect caused her injury or that an alternative design would have prevented the injury. Id. at 11–13.

The defendant argues that the plaintiff has failed to establish that the Instant Pot's warnings were inadequate. Id. at 13. The defendant asserts that the plaintiff does not identify which warnings were inadequate, nor does Dr. Rondinone's report opine on this subject. Id. at 13–14. The defendant contends that there is no evidence that the plaintiff would have heeded any additional warnings because she disregarded the existing warnings instructing her not to attempt to open the Instant Pot's lid when it was in the locked position. Id. at 14.

The defendant next argues that there is no evidence that the pressure cooker was defective or unreasonably dangerous due to any defective warnings or design defect. Id. at 15. According to the defendant, the plaintiff must show that there was some hidden risk present in the product above and beyond what an ordinary consumer would expect. Id. It argues that the plaintiff was aware that the Instant Pot must be operated carefully due to the risk of contents "exploding" under pressure. Id. at 15–16. The defendant thus contends that there was no additional, hidden risk in the Instant Pot's condition that an ordinary consumer would not expect. Id. at 16.

The defendant argues that the plaintiff must establish that the Instant Pot was defective at the time of receipt and that she has not done so. Id. The

25

defendant argues that the plaintiff previously used the Instant Pot multiple times without incident, suggesting that the Instant Pot was delivered in a safe condition. Id. According to the defendant, the Instant Pot was certified safe under the applicable industry standards. Id. at 16–17. The defendant asserts that as the distributor, it had no control over the design or manufacture of the product and was responsible only for confirming that the products it sells are tested in compliance with applicable laws. Id. at 17. The defendant argues that its receipt of the manufacturer's certification satisfied its duties, so it cannot be held strictly liable for any defect in the product. Id.

The defendant argues that any defect or inadequate warning was not the cause of the plaintiff's injuries; her own misuse of the product was. Id. at 17–18. The defendant asserts that the plaintiff forced the lid open while the contents still were under pressure, causing the contents to overflow. Id. at 18. The defendant maintains that this interpretation is supported by its own expert's conclusions. Id. at 18–19.

The defendant argues that the plaintiff's negligence claim also must fail because she has not proven that the Instant Pot had any defects. Id. at 20. Additionally, it contends that there is no evidence that the defendant breached any duty to the plaintiff. Id. at 21. The defendant argues that it took reasonable steps to ensure that the product it sold was safe because it required that the manufacturer provide a safety certification. Id. at 21–22. The defendant says that it reasonably relied on that certification and had no control over the testing, design or manufacture of the product, precluding any breach of duty.

26

<u>Id.</u> at 22. The defendant also argues that the plaintiff's own negligent misuse of the pressure cooker contributed to her injuries, barring her recovery and similarly barring her breach of warranties claim. <u>Id.</u> at 22-24.

2. *Plaintiff's Response (Dkt. No. 51)*

The plaintiff responds that while her case is primarily a warnings defect case, the Instant Pot also has design defects which contributed to her injuries. Dkt. No. 51 at 7. She contends that Dr. Rondinone advances two design defect theories: the float valve was susceptible to clogging and the float valve can be inadvertently pressed when attempting to open the lid. <u>Id.</u> The plaintiff argues that even if the court excludes Dr. Rondinone's opinions, the defendant's argument still must fail because expert testimony is not required to establish a design defect. <u>Id.</u> at 8–9. The plaintiff argues that her testimony and injuries, as well as evidence of similar incidents involving other pressure cookers, is a sufficient basis for a jury to find that the pressure cooker was defective. <u>Id.</u> at 9.

The plaintiff argues that she did present a reasonable alternative design that would have prevented the float valve from clogging. <u>Id.</u> at 9–10. She asserts that there is a dispute regarding whether the float valve was unclogged at the time of the incident. <u>Id.</u> at 10. She contends that the evidence establishes that the float valve was free and functioning prior to cooking and that the float valve was unclogged when Dr. Rondinone inspected it. <u>Id.</u> But she states that the Instant Pot had been cleaned prior to Dr. Rondinone's inspection, so there is no way to determine whether the float valve became

27

clogged during cooking or was clogged at the time of the incident. <u>Id.</u> The plaintiff asserts that Dr. Rondinone also testified that the Instant Pot could have used an alternative lid design to avoid the user accidentally depressing the float valve. <u>Id.</u> at 10–11.

The plaintiff argues that there is sufficient evidence that the Instant Pot's warnings were inadequate. <u>Id.</u> at 11. She asserts that the Instant Pot's manual is devoid of warnings about the risk of a boil-over event, so there are no warnings for Dr. Rondinone to analyze. <u>Id.</u> Instead, the plaintiff argues that Dr. Rondinone pointed to other pressure cooker manuals to illustrate warnings that educate the user about the risk of boil-over events and how to avoid them. <u>Id.</u> at 11–12. The plaintiff maintains that because she is basing her claim on the absence of warnings, there is a presumption that "any missing instructions would have been read, and therefore a presumption of causation." <u>Id.</u> at 12 (quoting <u>Rogers by Rogers v. K2 Sports, LLC</u>, 348 F. Supp. 3d 892, 904 (W.D. Wis. 2018)).

The plaintiff argues that any claims that she misused the Instant Pot are not supported by the evidence because she testified that she did not "force" the lid open. <u>Id.</u> at 12–13. The plaintiff says that even if the evidence supported the defendant's contention, the question of whether she misused the Instant Pot or was otherwise contributorily negligent is for the jury to resolve. <u>Id.</u> at 14. She asserts that a reasonable jury could find that the Instant Pot was unreasonably dangerous as sold because it was physically possible to remove the lid while the contents were still under pressure, risking injury. <u>Id.</u> at 14–15.

28

The plaintiff argues that there is no obligation for her to prove that the Instant Pot was defective upon receipt. Id. at 15. She contends that there is a dispute over whether the Instant Pot met the applicable safety standard because the parties do not agree that the UL certification is sufficient. Id. at 15–16. She asserts that even if the product were tested under the correct UL standard, compliance with voluntary UL standards is not conclusive evidence that the product was safe. Id. at 17.

The plaintiff argues that the defendant, as a distributor, can be held liable under Wisconsin law because the Instant Pot's manufacturer is in bankruptcy proceedings. Id. at 17–18. The plaintiff says that she could not obtain or enforce a judgment against the manufacturer during the pendency of these proceedings, so Wisconsin law allows her to seek recovery from the distributor. Id. at 18.

The plaintiff next argues that her negligence claim cannot be resolved on summary judgment because it is fact-intensive. Id. She says that Dr. Rondinone's report suggests that the defendant did not take reasonable steps to ensure the safety of the product because the defendant did not perform an FMEA. Id. at 19. According to the plaintiff, that raises the question of whether the defendant breached its duty of care to the plaintiff. Id.

Finally, the plaintiff argues that there is no basis for granting summary judgment on her breach of warranty claims. Id. at 20. She contends that she was using the Instant Pot for its intended purpose at the time of the incident. Id. The plaintiff asserts that even if she was "misusing" the product by not

29

following the product's instruction manual, that does not mean she was not using the product for its intended use. Id. at 20–21.

### 3. *Defendant's Reply (Dkt. No. 53)*

The defendant replies that the plaintiff cannot argue that a defect in the Instant Pot caused the boil-over event because that contradicts Dr. Rondinone's report. Dkt. No. 53 at 2. It argues that Dr. Rondinone opined that the boil-over was a result of inadequate warnings, not any design defect, and so the plaintiff's new theory is not supported by the evidence. Id. The defendant maintains that the plaintiff still must establish that any additional warning about the boil-over risk would have been effective and that there is no automatic presumption that an additional warning would have been heeded. Id. at 2–3.

The defendant argues that expert testimony is necessary to resolve this case and says that the plaintiff cannot proceed if the court excludes Dr. Rondinone's opinions. Id. at 5. It argues that product liability cases are inherently technical and deal with matters beyond the knowledge of an ordinary juror. Id. The defendant asserts that absent any expert testimony about how the pressure cooker operates, the plaintiff cannot establish causation. Id. at 5–6. The defendant says that the plaintiff's references to other pressure cooker incidents are vague and that there is no evidence that those incidents would be admissible to support her theory. Id. at 6–7.

The defendant further argues that breach of warranty claims are "redundant of claims for strict liability, and should be stricken." Id. at 8. The

30

defendant asserts again that the plaintiff forced open the lid when the contents were under pressure, which it says does not comply with the product's intended use. Id. at 8–9.

B.    Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). "Material facts" are those that, under the applicable substantive law, "might affect the outcome of the suit." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A moving party "is 'entitled to a judgment as a matter of law'" when "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Still,

> a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Id. (internal quotation marks omitted).

To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. See Heft v. Moore, 351 F.3d 278, 282 (7th Cir. 2003) (citing Liberty Lobby, 477

31

U.S. at 255). "However, [the court's] favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." <u>Fitzgerald v. Santoro</u>, 707 F.3d 725, 730 (7th Cir. 2013) (quoting <u>Harper v. C.R. Eng., Inc.</u>, 687 F.3d 297, 306 (7th Cir. 2012)). That is, "to survive summary judgment, the non-moving party must establish some genuine issue for trial 'such that a reasonable jury could return a verdict' in her favor." <u>Fitzgerald</u>, 707 F.3d at 730 (quoting <u>Makowski v. SmithAmundsen LLC</u>, 662 F.3d 818, 822 (7th Cir. 2011)).

    C.    <u>Analysis</u>

        1.    *Strict Liability*

The plaintiff asserts a strict product liability claim under Wis. Stat. §895.047, arguing that the Instant Pot contained a design defect and had inadequate instructions or warnings. Under Wis. Stat. §895.047, the plaintiff must show

> (a) That the product is defective because it contains a manufacturing defect, is defective in design, or is defective because of inadequate instructions or warnings. . . .
> (b) That the defective condition rendered the product unreasonably dangerous to persons or property.
> (c) That the defective condition existed at the time the product left the control of the manufacturer.
> (d) That the product reached the user or consumer without substantial change in the condition in which it was sold.
> (e) That the defective condition was a cause of the claimant's damages.

Wis. Stat. §895.047(1); <u>see also</u> <u>Murphy v. Columbus McKinnon Corp.</u>, 405 Wis. 2d 157 (Wis. 2022). The defendant says that the plaintiff cannot sustain a strict liability claim against it because it is not the Instant Pot's manufacturer.

But Wisconsin law provides that a strict liability claim may proceed against a distributor if the plaintiff could not enforce a judgment against the manufacturer. Wis. Stat. §895.047(2)(a)(3). The plaintiff states that the pressure cooker's manufacturer, Instant Brands, currently is in bankruptcy proceedings, preventing the plaintiff from bringing a lawsuit or enforcing a judgment against the manufacturer. Under these circumstances, the plaintiff properly can bring a strict liability claim against the distributor.

To establish her strict product liability claim under a design defect theory, the plaintiff first must demonstrate that the Instant Pot was defectively designed. Gilbert v. Lands' End, Inc., 158 F.4th 839, 845 (7th Cir. 2025) (citations omitted). A plaintiff can establish a design defect "if the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the manufacturer and the omission of the alternative design renders the product not reasonably safe." Wis. Stat. §895.047(1)(a).

The plaintiff alleges that Dr. Rondinone identified two design defects: "(1) that the Instant Pot's float valve is exposed to potential clogging from food debris and (2) that the interlock's raised float valve can be inadvertently depressed while attempting to open the lid or releasing pressure from the unit." Dkt. No. 51 at 7. But although Dr. Rondinone's report identifies those two facts, as the court has already discussed, Dr. Rondinone does not opine that either were design defects that made the product unreasonably dangerous. That is why the court excluded that Dr. Rondinone's opinions about the float

33

valve. Similarly, the court excluded Dr. Rodinone's opinions about the placement of the float valve because it had nothing to do with Dr. Rodinone's identified cause of the incident. Dr. Rondinone opined that a boil-over event was the most likely scenario. Neither Dr. Rondinone nor the plaintiff identify any design defect in the Instant Pot that caused the boil-over; a boil-over event is a risk that *cannot* be mitigated by design. See Dkt. No. 51-1 at 12, ¶19 (stating that "the possibility of a boil over event cannot be designed out of the product").

By the plaintiff's own admission, then, her injuries were not caused by any *design defect* because the cause of her injury—the boil-over—cannot be prevented by design. Because the plaintiff's own evidence asserts that her injuries were not caused by any defect in the Instant Pot, she has not shown that the risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design. Because the plaintiff has not established a design defect, the court must grant summary judgment for the defendant on this claim.

The plaintiff states that this is "primarily" a warnings defect case. To establish a strict liability claim for a warning defect, the plaintiff first must show that the Instant Pot is "defective because of inadequate instructions or warnings." Wis. Stat. §895.047(1)(a). "A product is defective because of inadequate instructions or warnings only if the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of

reasonable instructions or warnings by the manufacturer and the omission of the instructions or warnings renders the product not reasonably safe." Id.

The plaintiff contends that the Instant Pot's manual contains no warnings about boil-over events and says that had it included such warnings, the incident could have been prevented. Dr. Rondinone's report identifies several warnings provided by other pressure cooker brands that describe how a user might mitigate the risk of a boil-over event by gently shaking the contents prior to opening. Dkt. No. 46-2 at 10–11. Viewing these facts in the light most favorable to the plaintiff, a reasonable jury could find that the plaintiff identified flawed warnings and provided possible alternative warnings.

But what the plaintiff has failed to do is to provide any evidence that an alternative warning would have prevented the incident. The plaintiff alleges that "[t]here is a presumption that any missing instructions would have been read, and therefore a presumption of causation." Dkt. No. 51 at 12 (quoting Rogers by Rogers v. K2 Sports, LLC, 348 F. Supp. 3d 892, 904 (W.D. Wis. 2018)). But neither Wisconsin courts nor federal courts interpreting Wisconsin law consistently apply such a presumption. See Kurer v. Parke, Davis & Co., 272 Wis. 2d 390, 409–10 (Wis. Ct. App. 2004) (stating that a plaintiff "must also establish causation by showing that, if properly warned, he or she would have altered behavior and avoided injury" and "evidence must support a reasonable inference that the existence of an adequate warning may have prevented the injury"); Moore, 603 F. Supp. 3d at 682–83 (summary judgment on warning defect claim was proper where plaintiff's expert failed to identify

35

how an alternative warning could have prevented the injury); <u>Rivers v. B Braun Interventional Sys. Inc.</u>, Case No. 19-CV-988, 2023 WL 7166520, at *25 (E.D. Wis. Oct. 31, 2023) (granting summary judgment for defendant where plaintiff failed to establish that additional warnings would have changed the user's behavior); <u>Zember v. Ethicon, Inc.</u>, Case No. 20-CV-369, 2021 WL 1087041, at *5 (E.D. Wis. Mar. 22, 2021) (granting summary judgment for defendant where the plaintiff could not show "he either relied on the warning provided or would have acted differently if given an adequate warning"). Instead, the prevailing view is that "[t]he plaintiff has the burden to show that the lack of a warning was a substantial factor in her injuries." <u>Moore</u>, 603 F. Supp. 3d at 683 (citing <u>Morden v. Cont'l AG</u>, 235 Wis. 2d 325, 355 (Wis. 2000)). The plaintiff provides no evidence—not even her own testimony—that additional warnings would have prevented her injury. Because the plaintiff has not shown that the incident could have been reduced or avoided by the provision of reasonable instructions or warnings, she has not established that the Instant Pot has a warning defect. The court must grant summary judgment for the defendant on the warning defect claim.

### 2. *Negligence*

The plaintiff also brings a negligence claim. Wisconsin's product liability statute does not preclude the plaintiff from bringing a common law negligence claim. Wis. Stat. §895.047(6). To establish a negligence claim under Wisconsin law, the plaintiff must show "(1) the existence of a duty of care on the part of the defendant, (2) a breach of that duty of care, (3) a causal connection

36

between the defendant's breach of the duty of care and the plaintiff's injury, and (4) actual loss or damage resulting from the injury." Moore, 603 F. Supp. 3d at 683 (citing Smaxwell v. Bayard, 274 Wis. 2d 278, 298 (Wis. 2004)). In the products liability context, a negligence claim still "requires a plaintiff to prove that the product causing injury was 'defective.'" Burton v. E.I. du Pont de Nemours & Co., Inc., 994 F.3d 791, 818 (7th Cir. 2021) (quoting Godoy *ex rel.* Gramling v. E.I. du Pont de Nemours & Co., 319 Wis. 2d 91, 106 n.7 (Wis. 2009)). As the Seventh Circuit has explained,

> Requiring a product defect for negligence claims makes sense because otherwise a defendant might be found negligent merely for making and selling a potentially dangerous product. . . . Allowing a claim of negligence without a product defect, as the district court did here, allows a jury to find the defendant negligent in the absence of any actual negligence, whether in the design, manufacture, or marketing of a product. There is a name for this type of liability—it is called strict liability, not negligence.

Burton, 994 F.3d at 818–19. Because the plaintiff has not demonstrated that the Instant Pot was defective in design or warnings, her negligence claim fails.

The plaintiff also attempts to argue that the defendant was negligent because it failed to perform an FMEA or other risk assessment before distributing the Instant Pot. But again, there is no defect in the product, and the court has excluded the portions of Dr. Rondinone's opinions that address FMEAs. The plaintiff has not presented any other evidence that a product's distributor has any duty of care to perform a risk assessment on the products it sells. With no evidence that the defendant breached its duty of care to the plaintiff, either through the product's defect or the defendant's purported failure to perform an FMEA, the plaintiff's negligence claim cannot proceed.

37

The court must grant summary judgment for the defendant on the plaintiff's negligence claim.

### 3. *Breach of Warranties*

The plaintiff's final claim is for breach of warranties. But a breach of warranty claim cannot survive where, as here, it lies on the same grounds as a strict liability claim. Austin v. Ford Motor Co., 86 Wis. 2d 628, 644 (Wis. 1979) (holding that "it is inappropriate to bring an action for breach of warranty where a tort remedy is sought"); Dippel v. Sciano, 37 Wis. 2d 443, 463 (Wis. 1967) ("physically injured users or consumers of unreasonably dangerous defective products should pursue their remedy under the rule of strict liability in tort"); see also Liberty Mut. Fire Ins. Co. v. LG Elecs. USA, Inc., Case No. 10-C-520, 2012 WL 5497852, at *5 (E.D. Wis. Nov. 13, 2012) (citing Austin and dismissing breach of implied warranty claim as duplicative of tort claims). The court will dismiss the plaintiff's breach of warranties claim.

The court is granting summary judgment for the defendant on all claims, so it will dismiss the case with prejudice.

## IV. Conclusion

The court **GRANTS IN PART** the defendant's motion to exclude Dr. Rondinone's opinions. Dkt. No. 46. The court **ORDERS** that Dr. Rondinone's opinions related to boil-over events and warnings related to such events are admissible and **EXCLUDES** all other opinions as irrelevant.

The court **GRANTS** the defendant's motion for summary judgment. Dkt. No. 47.

The court **ORDERS** that this case is **DISMISSED WITH PREJUDICE**.

The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 18th day of June, 2026.

BY THE COURT:

HON. PAMELA PEPPER
Chief United States District Judge

39